**Gene L. MASON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 4, 1972.

As Modified on Denial of Rehearing
March 31, 1972.

Edward F. Prichard, Jr., Frankfort, Jerry Anderson, Shuffett, Kenton & Anderson, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., M. Curran Clem, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Jr., Judge.

This is an appeal from a judgment entered on the verdict of a jury finding appellant guilty of "knowingly receiving stolen property" and fixing his punishment at one year in prison. In appellant's "Statement of Questions Presented," he specifies two claimed trial errors. Appellant charges the trial court committed reversible error "in refusing to admonish the jury or take other corrective action" relative to the argument of the Commonwealth's attorney on the question of the sufficiency of the evidence to charge appellant with "knowledge" that the merchandise was stolen; and he charges error by the trial court in overruling his motion that the Commonwealth be required to produce the stolen typewriter.

We shall discuss those questions after briefly stating the facts.

The appellant, a college professor at the University of Kentucky, was attending a political campaign rally at Paradise Inn in Lexington, Kentucky, when he was approached by a stranger later found to be James Googe. They met at the bar of the Inn when Googe asked appellant if he was interested in buying an IBM typewriter. The two proceeded out to the parking lot where Googe unveiled an unopened shipping carton with the IBM logo stamped thereon. Googe testified he asked $50 for the typewriter. Appellant says the quoted price was $100. The two got into Googe's automobile when a Mr. Williamson appeared who turned out to be the driver of the Googe car. They drove to appellant's home, but stopped by a liquor store on the way so appellant could cash a $50 check.

After arriving at the home of appellant, the typewriter was unpacked and inspected. Appellant made the purchase, bade his visitors good night and retired. Sometime later, appellant delivered the typewriter to a Mr. Vetter to do some repairs on it. Eight days later and before dawn on November 4, 1969, some police officers, armed with a search warrant for the home of appellant,

appeared there. They were seeking the typewriter in question. The man Googe accompanied the officers. Why, we do not know; perhaps to soften the blow from the long arm of the law to himself. Then and there, appellant denied having seen Googe before and freely permitted the search without disclosing the fact he had previously delivered the typewriter to Vetter.

On the day following the search, appellant was arrested on a warrant charging him with knowingly possessing stolen property. He engaged the services of an attorney, who enlisted the assistance of another attorney to act as a go-between in returning the typewriter to the police from Mr. Vetter. The police called at the home of the go-between attorney, picked up the typewriter, and returned it to IBM. It was repaired and resold.

■ Appellant does not attack the instructions which properly required the jury to find that appellant knew that the typewriter had been stolen. He assails the argument of the Commonwealth's attorney in commenting on the question of knowledge of the fact the typewriter was stolen. Following is the part of the argument objected to:

"The purpose of this law is to discourage theft. And in purest theory, if we had a completely honest community, there would be no theft because there would be nobody to buy stolen property. Because the circumstances under which it is offered for sale would cry out to the honest man, 'That must be stolen, and I should not buy it.' Not because he knows it's stolen but because he should know it's stolen, and so I disagree with Mr. Prichard. It is not pure knowledge, pure proof positive, it is knowledge that he knew or should have known under the circumstances."

This court in Ellison v. Commonwealth, 190 Ky. 305, 227 S.W. 458 (1921), cited and relied on by both the appellant and the appellee, weighed the elements necessary to

charge knowledge under the identical crime here involved. We quote therefrom at page 461:

" * * * [I]t has always been held that proof of receiving goods under circumstances that would cause a reasonable man of ordinary observation to believe or to morally know that they were stolen constitutes evidence from which a jury is authorized to infer and to find that the recipient of stolen goods had full knowledge of their character, and hence a conviction of guilty knowledge may be sustained by circumstantial evidence."

Let us then review the facts and circumstances developed by the evidence to determine whether such circumstances tip the scales used in Ellison, supra. The appellant, a college professor, classified as a "political science instructor," met the man Googe not at church or in the course of business, but at a bar at nighttime. The stranger took appellant to his automobile where a carton containing a new typewriter was opened. Ordinarily, people don't go around trying to sell new, or old, typewriters from their automobiles. The asking price of $50 or $100, take your choice, was a circumstance which should have put a person of "ordinary observation" and intelligence on notice that the property was stolen in view of the fact that the established market price of the machine was $480.

The conduct of the appellant after the purchase of the machine is a further circumstance bearing on the question of appellant's knowledge of the stolen character of the property. He got it out of his home in short time. When the officers called at his home on November 4, 1969, he denied any acquaintance with Googe. And with the knowledge that the typewriter was not then in his home, but in the possession of Vetter where he had placed it, he failed to come clean with the law and disclose the location of the typewriter. On top of all this, after receiving information that the law was close on his trail, he attempted to get the hot property into the hands of the law without letting the law know the identity of the person turning it over.

Considering all these circumstances, we conclude the jury was fully justified in finding as it did under the clear and explicit instructions of the court that appellant knew the property had been stolen. The argument of counsel was technically erroneous, but we have no hesitancy in concluding it was not prejudicial. 147 A. L.R. 1058.

Appellant's only other argument relates to the failure of the Commonwealth to produce the typewriter in question. After proper identification of the typewriter by IBM, it was surrendered to IBM before trial. Minor repairs were made to same and it was sold. Appellant admitted buying a typewriter of the same type with the same trademark. He merely argued that he had no knowledge of its stolen character. We can see no earthly way in which the appellant was prejudiced by the failure of the Commonwealth to produce the typewriter at the trial. Furthermore an employee of IBM testified as to the nature and cost of the repairs to the typewriter, and the appellant chose not to cross-examine the witness on the identity of the typewriter. No prejudice here.

The judgment is affirmed.

All concur.